UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARRYL LEE WRIGHT,<br><br>          Petitioner,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | Case No. C19-5254-RBL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **June 28, 2019** |

Petitioner, Darryl Lee Wright, is currently serving the remainder of his sentence at a residential reentry center, with a projected release date of June 6, 2019.[1] Dkt. 6, at 2; *see United States v. Darryl Lee Wright*, 14-cr-05539-BHS. Mr. Wright requests the Court issue an order: (1) directing the Bureau of Prisons ("BOP") to recalculate his good time credits under the First Step Act of 2018 -- which amended 18 U.S.C. § 3624(b) and permits federal inmates to earn up to 54 days of good time credit for each year of the sentence imposed -- and (2) declaring that this new calculation governs his release date. *See* Dkt. 6, at 10-11. Mr. Wright contends he should be immediately released because, with the additional good time credit, his release date would have been May 16, 2019. *Id.*, at 3.

The government contends Mr. Wright's petition is premature and unripe; the provision of the First Step Act under which he seeks relief has not yet taken effect and will not take effect

---

[1] The Court notes that, due to the timing, it is possible that if objections to this Report and Recommendation are submitted and ruled upon in this matter Mr. Wright's petition may at a later date, effectively, be moot.

REPORT AND RECOMMENDATION - 1

until "the date that the Attorney General completes and releases the risk and needs assessment system." Dkt. 11, at 3. This Court and others have denied relief in similar cases because the amendment has not yet taken effect. *See* Dkt. 11, at 4-5 (and cases cited therein). The government also contends relief is not appropriate due to Mr. Wright's failure to exhaust administrative remedies. *Id.*, at 6.

Mr. Wright's petition should be dismissed with prejudice because the provision of the First Step Act under which he seeks relief has not yet taken effect.

## I. BACKGROUND

### A.   Mr. Wright's Term of Imprisonment

In 2016, Mr. Wright pleaded guilty in the Western District of Washington to two counts of wire fraud in violation of 18 USC §1343. *See United States v. Darryl Lee Wright*, 14-cr-05539-BHS, Dkt. 90. On June 1, 2017, the Honorable Benjamin H. Settle sentenced Mr. Wright to thirty-six (36) months of imprisonment followed by three years of supervised release. *Id.*, Dkts. 241, 242. Mr. Wright's current projected release date is June 6, 2019, and he is currently in custody at the Residential Reentry Center in Tacoma, Washington, under the custody and control of the BOP. Dkts. 6, 11, 12.

Mr. Wright's habeas petition is one of a growing number of § 2241 habeas petitions recently filed by federal prisoners seeking release based on the First Step Act prior to July 19, 2019.[2]

### B.   The First Step Act

---

[2] *See e.g.*, *Johnston v. Jaquez*, C19-550-JLR-BAT (alleging release date of April 29, 2019), Dkt. 12 (Report and Recommendation issued June 4, 2019, recommending dismissal of petition); *Turner v. Jacquez*, C19-545 JCC-BAT (alleging release date of May 19, 2019); *Corbett v. Jacquez*, C19-531 MJP-BAT (alleging release date of July 7, 2019); *Acedo v. Jacquez*, C19-529 RSM-MLP (alleging release date of July 7, 2019); *Garcia-Orante v. Jacquez*, C19-536 RAJ-MLP (alleging release date of June 2, 2019); *Rigney v. Jacquez*, C19-548 RSL-MLP (alleging release date of May 30 2019); and *Soundingsides v. Jacquez*, C19-544 JCC-MLP (alleging release date of June 20, 2019).

REPORT AND RECOMMENDATION - 2

Under federal statutes, the amount of time an inmate actually serves on a term of custodial imprisonment is determined by calculating the inmate's sentence of in-custody time, and then making a deduction of time that represents good time credits. 18 U.S.C. § 3624(a) and (b). The Sentencing Reform Act of 1984 eliminated the parole system and sharply cut back on the rate at which federal prisoners could earn good time credit, providing in § 3624(b) that prisoners could receive "credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment." The BOP calculated the good conduct earned based on the data point of actual time served in prison, rather than the data point of the length of the originally-imposed prison sentence. *Barber v. Thomas*, 560 U.S. 474, 476-79 (2010). This resulted in prisoners effectively earning 47 days per year of good conduct credit instead of a full 54 days, because a prisoner is unable to earn a full year's worth of good time credit in his final year of incarceration assuming it is a partial year of confinement. *Id.* The Ninth Circuit upheld this computation in *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001), and the Supreme Court approved the 47-day formula using time of actual custody. *Barber*, 560 U.S. at 492.

Shortly after *Barber*, the Department of Justice and the BOP supported legislation that would shift the 54-day calculation from actual time served to the sentence imposed, thereby increasing the maximum available good time credits from 47 to 54 days per year. *See* Hearing on the Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime, Terrorism, Homeland Security and Investigations of the H. Comm. on the Judiciary, 113th Cong., at 23-24 (2013) (Statement of Charles E. Samuels, Jr. Director, Federal Bureau of Prisons).[3] The provision was included in the First Step Act, which was signed into law on December 21, 2018.

---

[3] Available at https://www.govinfo.gov/content/pkg/CHRG-113hhrg82847/pdf/CHRG-113hhrg82847.pdf, at 23-24.

REPORT AND RECOMMENDATION - 3

Title I of the First Step Act, entitled "Recidivism Reduction," consists of seven sections. The bulk of the title is set out in Section 101, which contains two subsections, each amending a separate statute.

**Subsection 102(a)** amends 18 U.S.C. § 3621 to provide for implementation of a risk and needs assessment system (referred to as the "System" within the statute) to be developed in accordance with Section 101. The risk and needs assessment system shall (1) determine the recidivism risk level (minimum, low, medium, or high) of each prisoner at intake; (2) assess and determine the risk of violent or serious misconduct of each prisoner; (3) determine the type and amount of programming for each prisoner and assign programming accordingly; (4) reassess each prisoner periodically and adjust programming assignments accordingly; (5) reassign prisoners to appropriate programs based on revised determinations; (6) determine when to provide incentives and rewards for successful participation in programming or productive activities; and (7) determine when a prisoner is ready to transfer into prerelease custody or supervised release. Pub. L. 115-391, § 101, 132 Stat. 5194, 5195-5208 (2018) (promulgating 18 U.S.C. §§ 3631-3635); Staff of S. Comm. on the Judiciary, 115th Cong., S.3649, The First Step Act Section by-Section Summary, at 3 (Nov. 15, 2018).

The Attorney General has 210 days after enactment (December 21, 2018) within which to develop and publicly release the risk and needs assessment system. 132 Stat. at 5196 (promulgating 18 U.S.C. § 3632). Within 180 days after that, the Director of the BOP must assess each prisoner and begin to provide appropriate programming. 132 Stat. at 5208 (promulgating 18 U.S.C. § 3621(h)). There is a two-year "phase-in" for the BOP to make programming available to all prisoners. 132 Stat. at 5209.

**Subsection 102(b)** makes two amendments to 18 U.S.C. § 3624. As relevant to Mr.

REPORT AND RECOMMENDATION - 4

Wright's petition, **Subsection 102(b)(1)** amends 18 U.S.C. § 3624(b)(1) to change the method by which the BOP is to calculate good time credits (hereinafter, "the good-time-fix amendment"):

> Section 3624 of title 18, United States Code, is amended—
>
> (A) in subsection (b)(1)—
>
> (i) by striking '', beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term,'' and inserting ''of up to 54 days for each year of the prisoner's sentence imposed by the court,''; and
>
> (ii) by striking ''credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited with in the last six weeks of the sentence'' and inserting ''credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment[.]''

§ 102(b)(1)(A), 132 Stat. at 5210. The Senate's Section-by-Section Report describes the intent of these amendments:

> Amends Section 3624 of title 18 of the U.S. Code to clarify congressional intent behind good time credit, which is earned for "exemplary compliance with institutional disciplinary regulations," to ensure that a prisoner who is serving a term of imprisonment of more than 1 year may receive good time credit of 54 days per year toward the service of the prisoner's sentence. Also establishes eligibility for prerelease custody or supervised release for risk and needs assessment system participants. Allows such eligible prisoners to be placed in home confinement or residential reentry centers, subject to the conditions required by the Act and the BOP Director, or transferred to begin a term of supervised release; a violation of the conditions of prerelease custody may result in revocation and require the violator to return to prison. Requires the Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, to issue guidelines for BOP to use in determining the appropriate type of prerelease custody or supervised release and level of supervision required, as well as consequences for violations of prerelease custody conditions. Requires the BOP Director to enter into agreements with the United States Probation and Pretrial Services to supervise prisoners placed in home confinement and ensure that there is sufficient prerelease custody capacity to accommodate all eligible prisoners. Additionally, allows prisoners to receive mentoring services from a person that provided those services to the prisoner while incarcerated, absent a significant security risk.
>
> *Clarifies that the amendments in this section related to prerelease custody shall take effect on the date that the Attorney General completes and releases the new risk and needs assessment system*, and apply with respect to offenses committed before, on, or after the date of enactment of the Act, except with respect to offenses committed before November 1, 1987 (which are subject to federal parole).

The First Step Act Section-by-Section Summary, at 3 (emphasis added).

Mr. Wright contends this italicized language delays implementation of *only* those provisions of Subsection 102 relating to prerelease custody and which are directly dependent on the new risk and needs assessment system (such as new Subsection 102(g)[4]), but *does not* delay implementation of the good-time-fix amendment contained in Subsection 102(b)(1).

The government contends the plain language of the First Step Act establishes that *all amendments made by Subsection 102*, which includes the good-time-fix amendment, do not take effect until the Attorney General releases the risk and needs assessment system, which has not yet been completed and is not required to be completed until July 19, 2019.

Subsection 102(b)(2) contains the effective date language applicable to Subsection 102:

> EFFECTIVE DATE − The *amendments made by this subsection* shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

See Pub. L. No. 115-015, 132 Stat. 015 § 102(b)(2) (2018) (emphasis added).

Most district courts that have considered habeas petitions similar to this case, have interpreted the "effective date" provision of Subsection 102(b)(2) to preclude relief under the good-time-fix amendment because that amendment has not yet taken effect.[5]

---

[4] As part of the earned time credit system, Section 102 also adds Subsection (g) to 18 U.S.C. § 3624. § 102(b)(1)(B), 132 Stat. at 5210-13. Under that provision, the BOP can place an "eligible prisoner" who has earned time credits equal to the time remaining on his or her sentence in prerelease custody (home confinement or residential reentry center) or transfer the prisoner to supervised release up to 12 months early.

[5] *See* Dkt. 11, at 4-5 (citing *Jeffrey Crittendon v. Warden White*, 19-cv-669, 2019 WL 1896501 (M.D. Pa. April 29, 2019); *United States v. Marc Yates*, 15-40063-01-DDC, 2019 WL 1779773 (D. Kan. Apr. 23, 2019); *Rufino Munoz v. United States*, 19-cv-324-O, 2019 WL 1778682 (N.D. Tex. Apr. 23, 2019); *McCullough v. Bureau of Prisons*, 19-cv-639-RMG, 2019 WL 1767393 (S.D. S.C. Apr. 22, 2019); *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment); *Greene v. Underwood*, No. 4:19-cv-160-Y, 2019 WL 1531673 (N.D. Tex. Apr. 9, 2019); *Matthews v. Williams*, No. 4:19-cv-518, 2019 WL 1639776 (N.D. Ohio Apr. 16, 2019); *United States v. Scouten*, No. 13-cr-20S, 2019 WL 1596881 (W.D.N.Y. Apr. 15, 2019); *United States v. Parrett*, No. 01-cr-168-JPS, 2019 WL

## II. DISCUSSION

**A.     Statutory Construction of First Step Act**

"'In the absence of an express provision in the statute itself, an act takes effect on the date of its enactment.'" *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir. 1986) (quoting *United States v. Clizer*, 464 F.2d 121, 123 n.2 (9th Cir. 1972)). "'The preeminent canon of statutory interpretation requires [the court] to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, [the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)).

The amendment relating to good time is one of three subsections contained in Subsection 102(b). Subsection 102(b)(2), the "Effective Date" subsection, provides that "[t]he amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." This language is unambiguous. Subsection 102(b)(2) states that the amendments contained in Section 102(b) (which includes the good-time-fix amendment), do not take effect until the Attorney General releases the risk and needs assessment system, which is due on July 19, 2019. Courts confronted with precisely the same question have concluded that this effective date provision applies to the

---

1574815 (E.D. Wis. Apr. 11, 2019); *Roy v. Bureau of Prisons*, No. 2:19-cv-59-RMP, 2019 WL 1441622 (E.D. Wash. Apr. 1, 2019); *Rizzolo v. Puentes*, 2019 WL 1229772 (E.D. Ca. Mar. 15, 2019); *Darren Bottinelli, et al. v. Josias Salazar, et al.*, No. 3:19-cv-256-MO, slip op. at *2-3 (D. Oregon Mar. 13, 2019) (appeal pending, *see Darren Bottinelli, et al. v. Salazar*, C.A. No. 19-35201); *Sheppard v. Quintana*, No. 5:19-cv-084-DCR, 2019 WL 1103391, at *2 (E.D. Ky. Mar. 8, 2019); *Sennett v. Quintana*, No. 5:19-cv-085-JMH, 2019 WL 1085173, at *2 (E.D. Ky. Mar. 7, 2019)).

good-time-fix amendment.[6]

Mr. Wright contends it makes little sense to delay implementation of the good-time fix amendment because the BOP could begin calculating good time credit pursuant to the amendment immediately. Dkt. 12, at 7. Yet the Court should hold that Congress said what it meant and meant what it said. Congress specifically stated that the Section 102(b) amendments would not take effect until the Attorney General completes the risk and needs assessment system, which he has until July 19, 2019 to do. There is nothing in the statute, in the Constitution, or in

---

[6] *See United States v. Murgia*, No. 3:10-cr-0076-01-HRH, 2019 WL 2236067 (D. Alaska May 22, 2019) (citing *United States v. Richards*, Case No. 3:05-cr-00185, 2019 WL 2008572, at *4 (M.D. Tenn. May 7, 2019) ("[a]lthough Richards argues that the effective-date provision does not apply to the good-time fix, virtually every court in the country confronted with the question has concluded that it does and that, as a result, motions seeking relief under the [First Step Act] now are premature"); *United States v. Sirois*, Case No. 1:11-cr-00206-JAW-2, 2019 WL 1923632, at *2 (D. Me. April 30, 2019) (citation omitted) ("the good time credit provisions of the First Step Act are not yet effective" because "Section 102(b)(2) of the Act specifically provides that the amendments made in subsection 102(b) of the Act take effect only when the Attorney General completes the 'risk and needs assessment system' required by Section 101(a) of the Act"); *Crittendon v. White*, Case No. 1:19-cv-669, 2019 WL 1896501, at *1 (M.D. Pa. April 29, 2019) (good time credit amendment does "not take effect until the Attorney General completes the 'risk and needs assessment system'"); *United States v. Yates,* Case No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kan. April 23, 2019) ("[c]ourts have concluded that the plain language of § 102 of the First Step Act mandates the change to good-time credit calculations after the Attorney General releases the risk and needs assessment system mandated by the Act"); *Matthews v. Williams*, 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio, April 16, 2019) (citation omitted) ("[t]he First Step Act is explicit about the effective date of the new good-time provisions[,]" which is on the date that "the Attorney General completes and releases the risk and needs assessment system"); *United States v. Scouten*, Case No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. April 15, 2019) (citation omitted) ("[b]y the plain terms of the Act, the provision is not effective until the Attorney General completes the risk and needs assessment system"); *Johnson v. Bureau of Prisons*, Case No. 4:19-cv-224-O, 2019 WL 1569360, at *1 (N.D. Tex. April 11, 2019) ("the good-time-credit change will not take effect until the attorney general completes the 'risk and needs assessment system' required to be completed within 210 days after the December 21, 2018 enactment, as provided by §§ 101(a) and 102(b)(2) of the [First Step Act] 2018"); *United States v. Parrett*, Case No. 01-CR-168-JPS, 2019 WL 1574815, at *1 (E.D. Wis. April 11, 2019) ("the Act's good-time provisions have not yet taken effect; before they do, the Attorney General must complete the 'risk and needs assessment system'"); *United States v. Powell*, Case No. 5:11-cr-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) (provision amending good time credit statute "has not yet taken effect"); *Roy v. United States Bureau of Prisons*, Case No. 2:19-CV-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) ("[t]he good-time provisions of the First Step Act ... did not become effective when the Act took effect on December 21, 2018")). *See also*, *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment).

REPORT AND RECOMMENDATION - 8

the Congressional record to the contrary.

Mr. Wright also urges the Court to consider the totality of the circumstances to construe that the good-time-fix amendment is immediately effective because Congress clearly intended to rectify the earlier mistake resulting in the BOP's erroneous good time credit calculation. Dkt. 12, at 3-13. Mr. Wright analogizes to the facts in *Gozlon-Peretz*, where the delayed effective date of the supervised release provisions of the Sentencing Reform Act gave way to the congressional intention to fill a gap in the sentencing scheme. *Id.*, at 8; *see Gozlon-Peretz v. United States*, 498 U.S. 395, 405 (1991) ("Given the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment."). Mr. Wright urges the Court to correct the "drafting inadvertence" of Congress that deprives well-behaved prisoners of full good time credits under § 3624(b). Dkt. 12, at 8. The Court should not do so.

The plain language of the good-time-fix amendment shows that Congress intended to reject the BOP's prior implementation of good conduct credit based on actual time served and to adopt the contrary position that good time credit is earned based on the imposed sentence length. Congress is instructing that federal prisoners are eligible to earn a full 54 days of good conduct credit per year, not the 47 days that resulted under the BOP's policy. Yet if Congress had wanted Subsection 102(b) to be effective on the date of enactment, it could have done so by not placing the good-time-fix amendment within Section 102, or by specifically stating that it was to be immediately effective, or by not stating any effective date (as it did elsewhere within the Act[7]) so

---

[7] Congress' intent regarding the effective date of the good-time fix amendment is highlighted by the manner in which it treated other provisions of the First Step Act. Congress for instance implemented a different effective date for Section 603 which amended 18 U.S.C. § 3582. The amendment addresses "compassionate" early release, and unlike the new 54 day good-time-fix amendment, the new compassionate early release amendment contained no delay in application language and thus became effective on December 21, 2018.

REPORT AND RECOMMENDATION - 9

that, by default, the subsection would be effective on the date of enactment. *See*, *e.g.*, *Gozlon-Peretz*, 498 U.S. at 404 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The Court should not interpret the amendment to require immediate implementation when Congress declined to do so.[8] To uphold Mr. Wright's position, the Court would be disregarding the plain language of Subsection 102(b)(2), which provides that the amendments made in subsection 102(b) of the Act take effect only when the Attorney General completes the "risk and needs assessment system" required by Section 101(a) of the Act. Congress can postpone the date on which a law, or part of a law, is to become effective. *See Gozlon-Peretz*, 498 U.S. at 405-08. And where Congress has provided an express effective date for a statutory provision, that date controls. *Id.*, at 403-404.

Section 102(b)(2) covers implementation of the good-time-fix amendment because it applies to the implementation of *all* of Section 102(b). Contrary to Mr. Wright's position, the risk and needs assessment system involves sentence calculation to the extent that the system must "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with § 3624." First Step Act of 2018, Pub. L. No. 115-015, 132 Stat. 5194, 5197, § 101(a) (2018).

Accordingly, Mr. Wright's habeas petition seeking recalculation of his good time credits under the First Step Act should be denied.

---

[8] The government has not argued that under the First Step Act Mr. Wright can or will be held until July 19, 2019. Additionally, Mr. Wright has not presented anything showing that the BOP plans on altering his current release date of June 6, 2019.

**B.      Constitutional and Prudential Ripeness**

The government contends that, "[b]ecause the amendment is not yet effective, any claim that the Bureau of Prisons has failed to calculate sentence credit according to its terms, is not yet ripe." Dkt. 11, at 4. Mr. Wright contends that, because the good-time-fix amendment should have taken effect upon the enactment of the First Step Act on December 21, 2018, he would have been released from custody on May 16, 2019, and therefore, his habeas corpus petition does not raise a hypothetical or an abstract disagreement. Dkt. 12, at 2. Mr. Wright argues further, "[t]his is not a claim about whether the BOP has properly counted days. This is a claim about the effective date of the good-time provision." Dkt. 12, at 2. Additionally, if Mr. Wright waited until July 19, 2019, when the government contends the good-time-fix amendment is effective, his petition would be moot, because his release date (as has already been established by the BOP) is June 6, 2019.

Federal courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, § 2. One component of the "case or controversy" requirement is that a claim must be ripe for review. *Bova v. City of Medford*, 564 F.3d 1093, 1095-96 (9th Cir. 2009). "[R]ipeness addresses when litigation may occur[,]" *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997), and is "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, (1967)). It has two components, "constitutional ripeness and prudential ripeness." *Id*. To determine constitutional ripeness, a court must examine "whether the issues presented are definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal citations omitted); *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009).

1  To determine prudential ripeness, the Supreme Court has developed a two-part test: "the fitness

2  of the issues for judicial decision" and "the hardship to the parties of withholding court

3  consideration." *Id*., at 1006.

4  Most district courts have denied similar petitions as meritless because Subsection

5  102(b)(1) has not yet taken effect and, as discussed above, Mr. Wright's petition should also be

6  denied on the merits on that basis. *See*, Dkt. 11, at 5, *supra*. However, the Court notes that the

7  basis of Mr. Wright's habeas petition is that the good-time-fix amendment should have taken

8  effect immediately and had the Court agreed with his position, he would have been entitled to

9  immediate release because his new release date would have been May 16, 2019. Thus, this

10 petition is not a "hypothetical or abstract" disagreement for Mr. Wright. In addition, Mr.

11 Wright's release date has already been established by the BOP as June 6, 2019. Therefore,

12 waiting until after July 19, 2019, would render his petition moot. For these reasons, the Court

13 should hold that his petition is not unripe and not subject to dismissal on that basis.

14 **C.    Exhaustion**

15 The BOP has an established Administrative Remedy Process for inmates wanting to

16 challenge their sentence calculations before proceeding to court. *See* 28 C.F.R. § 542.10 *et seq*.

17 The inmate must first seek informal resolution of the issue through the institution's staff and

18 then, if dissatisfied with the informal response, the inmate must then formally complain to the

19 institution's warden. . 28 C.F.R. §§ 542.13, 542.14. If the warden denies the inmate a remedy,

20 the inmate may appeal the denial of relief to the Regional Director of the region in which he is

21 confined. 28 C.F.R. § 542.15(a). Finally, if the Regional Director denies relief, the inmate may

22 appeal to the BOP's General Counsel in Washington, D.C. *Id*. Exhaustion of administrative

23 remedies does not occur until the inmate has requested and been denied relief at all levels of the

24

25

REPORT AND RECOMMENDATION - 12

BOP.

Mr. Wright indicates that prior to being transferred from the federal Detention Center at SeaTac to the Tacoma Residential Reentry Center (TRRC), the BOP sent an "undated, unsigned email through its controlled-access system, stating their interpretation of the FSA regarding additional … [good conduct time] … is not effective immediately." Dkt. 6, at 10. The respondent does not appear to dispute that the BOP has taken this position and informed prisoners as such. Mr. Wright argues the Court should not require him to make further efforts seeking an administrative remedy, "as a BOP determination has already been made."[9] *Id.*

Exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to render relief; or 3) the agency has indicated predetermination of the issue, rendering exhaustion futile. *Madigan v. McCarthy*, 503 U.S. 140, 146–49 (1992), *superseded on other grounds*, 42 U.S.C. § 1997(e).

The Court recognizes that the exhaustion requirement is certainly reasonable where the DOJ and BOP are in the process of implementing a new statute and Congress has given the Executive Branch time for this implementation. Requiring exhaustion after the good-time-fix amendment has been implemented will allow the BOP to develop a factual record and apply its expertise before subjecting claims to challenges in the federal courts. Under the circumstances of this case, however, requiring Mr. Wright to exhaust would appear to be futile if the BOP has taken the position, and notified its inmate population, that the retroactive amendment to the good time credit statute "is not effective immediately." To the extent the BOP as predetermined the issue, and made it clear that any request Mr. Wright makes to the BOP for calculation of good

---

[9] The Court notes that Mr. Wright indicates the email itself entitled "Notice to Inmate Population" is attached to his petition but it does not appear as an attachment on the Court's docket. Dkt. 6, at 10.

1 time credits under the amended statute will be denied, there is no available administrative

2 remedy. Under these circumstances, it would be futile for Mr. Wright to attempt to exhaust his

3 administrative remedies. Accordingly, the Court should not dismiss the petition on this basis.

**D.     Equal Protection/Due Process**

Mr. Wright contends he is being denied equal protection of the law by the delayed implementation of the good-time-fix amendment. Dkt. 6, at 7-8; Dkt. 12. The First Step Act should be interpreted as applying retroactively; it states that the good-time-fix amendment applies equally to all inmates, whether they offended "before, on, or after the date of enactment" of the Act. First Step Act of 2018, Pub. L. 115-391, § 102, 132 Stat. 5194, 5213. However, Mr. Wright points out that the new computation does not apply to all inmates because there are many inmates, like himself, who have release dates between December 21, 2018, and July 19, 2019. Dkt. 12, at 10. Mr. Wright argues that this "arbitrarily-comprised group" will serve more time than other inmates because the BOP continues to apply the calculation method presently in existence until the good-time-fix amendment becomes effective on July 19, 2019. *Id.*

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity and must be upheld if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (citation omitted). The rational basis test sets a low bar. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 903 (9th Cir. 2018). The court "asks whether 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (quoting *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

Here, the delayed application of the good-time-fix amendment does not target a "suspect

class," which is defined by an immutable characteristic such as race, national origin, and gender. *See Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). Being a "prisoner" or "convicted person" fails to constitute a suspect class for equal protection purposes. *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011). Additionally, a prisoner possesses no constitutional right to release before his valid sentence expires. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).

Contrary to Mr. Wright's contention,[10] he is also not suffering the wrongful deprivation of good time credits. Rather, the "credit toward service for satisfactory behavior" contained in the good-time-fix amendment merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior based on the new 54-day formula. *See*, *e.g.*, *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005) (BOP's policy of calculating good time credits is subject only to rational basis review); *see Molina v. Underwood*, No. 3:19-cv-641-K-BN, 2019 WL 1533444, at *2 (N.D. Tex. Mar. 19, 2019) (summarily dismissing § 2241 petition seeking immediate recalculation of good-time credit under the First Step Act and rejecting equal protection and due process claims).

Mr. Wright argues that delayed implementation of the good-time-fix amendment would violate equal protection because he has to spend an additional 21 days more in custody than others. Dkt. 12, at 10. The delayed implementation will benefit those prisoners whose 47-day release dates fall after July 19, 2019. However, the fact that the new good-time-fix will benefit

---

[10] The cases on which Mr. Wright relies (*see* Dkt. 11, at 10 (citing *Weaver v. Graham*, 450 U.S. 24, 33–34 (1981) (good time credits protected against ex post facto reductions); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (compliance with due process required before depriving prisoners of good time credits); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (BOP regulations codify constitutionally-required protection against deprivation of good time credits without due process of law) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)), emphasize a prisoner's right to due process before earned statutory good time credits can be taken from him by a retroactive law or regulation, or as the result of a disciplinary punishment – here, the additional good time credits do not exist until the amendment is effective.

REPORT AND RECOMMENDATION - 15

some groups of inmates and not others is not a basis for invalidation.

The rational basis standard does not require that Congress choose the best means of advancing its goals or that the means chosen is the best fit. *See*, *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir.1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir. 1999); *see also*, *United States v. Navarro*, 800 F.3d 1104, 1110-14 (9th Cir. 2015) (rejecting arguments that delayed implementation of Amendments 782 and 788 to the Sentencing Guidelines violated the Due Process and Equal Protection Clauses because delay provided necessary time for court review, accommodated the need to arrange for transition and reentry programs, and allowed affected agencies to prepare for increased workload).

The delayed implementation of the good-time-fix amendment "bears a rational relation to [the] legitimate end" of allowing "the Executive Branch time for this implementation. It is reasonable to permit that implementation to occur[.]" *See Shah v. Hartman*, No. 1:18-cv-7990, slip op. at *5 (N.D. Ill. Jan. 3, 2019), available at http://www.lisa-legalinfo.com/wp-content/uploads/2019/01/ Order -January-3-2019.pdf. Congress rationally chose to give the BOP a reasonable time to develop and implement through notice-and-comment rulemaking a new approach to awarding credit not only for good conduct, but also for successful completion of recidivism reduction programming under 18 U.S.C. § 3632(d)(4), and to complete the planning necessary to assist individuals with the reentry process.

Accordingly, the Court should hold that the delayed implementation does not violate petitioner's Due Process and Equal Protection rights.

### III. CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Wright's habeas petition seeking recalculation of his good time credits under the First Step Act be denied.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 28, 2019**, as noted in the caption.

Dated this 5th day of June, 2019.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17